SECURITY LIFE & TRUST CO. *v.* FIRST NATL. BANK IN LITTLE ROCK, ADM'R

5-5370                                        460 S. W. 2d 94

Opinion delivered December 7, 1970

*Wright, Lindsey & Jennings;* By: *Winslow Drummond,* for appellant.

*Cooper Jacoway,* for appellee.

CARLETON HARRIS, Chief Justice. Claude Lee De-Loach, a resident of North Little Rock, died as a result of a gunshot wound. At the time there was in force a policy of insurance on the life of DeLoach issued by Security Life and Trust Company, appellant herein. First National Bank in Little Rock, Administrator of the Estate of DeLoach, and appellee herein, instituted suit against appellant in the Pulaski County Circuit Court, asserting that DeLoach died an accidental death and that the administrator was entitled to recover on the policy in the amount of $8,200.00 plus statutory penalty and an attorney's fee. Appellant denied the allegation that the death was accidental, and affirmatively pleaded that DeLoach's death was suicide. The policy provided for a refund of premium in the event of self-destruction, and appellant tendered $125.02 into the registry of the court. On trial, the sole issue was whether the death of DeLoach was the result of an accident or whether it was a suicide. Instructions including three which are involved in this appeal, were given. Plaintiff's instruction number two and instructions number three[1] and eight, given by the court, are as follows:

"The term 'self destruction' as it is used in the insurance policy, means the same thing as 'suicide'. In order for the insurance company to establish that Claude DeLoach died as a result of his self destruction, the company must prove to you that Claude DeLoach committed suicide.

\*　\*　\*

---

[1]Requested instruction number three was modified before being given as set out in this opinion.

You are instructed that suicide is more than the taking of one's own life, it is the intentional taking of one's own life. For a death to be suicide, the law requires that the decedent possess the intention of taking his own life at the moment of the action that resulted in his death.

In this case, the insurance company claims that the death of Claude DeLoach resulted from his suicide. In order to establish this claim, the insurance company is required to prove by a preponderance of the evidence that Claude DeLoach had the intention to kill himself at the moment that the gun fired the bullet that killed him.

If the insurance company fails to prove to you, by a preponderance of the evidence, that Claude DeLoach possessed that intention at the moment that the gun fired, then, in such event, your verdict will be for the plaintiff in the sum of $8,200.00.

\* \* \*

A party who has the burden of proof on a proposition must establish it by a preponderance of the evidence, unless the proposition is so established by other proof in the case. 'Preponderance of the evidence' means the greater weight of evidence. The greater weight of evidence is not necessarily established by the greater number of witnesses testifying to any fact or state of facts. It is the evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If, upon any issue in the case, the evidence appears to be equally balanced, or if you cannot say upon which side it weighs heavier, you must resolve that question against the party who has the burden of proving it."

Appellee then offered four instructions relating to the presumption against suicide. Plaintiff's requested instruction number five, probably more comprehensive than the others, reads as follows:

"There is a presumption against suicide, or death by any other unlawful act, and this presumption arises even where it is shown by proof that death was self-inflicted—the death is presumed to have been accidental until the contrary is made to appear. This rule is founded upon the natural human instinct or inclination of self-preservation, which renders self-destruction an improbability with a rational being."

All four of these requested instructions were refused. The jury returned a verdict for appellant, and a few days later, appellee filed its motion for a new trial, the motion being based upon the contention that the court erred because of failure to give the instructions relating to the presumption against suicide. On hearing, the court set aside the verdict of the jury and the judgment based thereon, and reinstated the case for another trial. From this judgment of the court, appellant brings this appeal. For reversal, it is simply asserted that the trial court erred in granting the motion for a new trial.

While the trial court gave no reason in its order (setting aside the verdict and judgment), the only ground urged by appellee in filing its motion was as previously stated and we treat the matter accordingly. First, let it be said that there is no dispute but that the instructions concerning the presumption against suicide offered by appellee, were a correct statement of the law. Appellant simply asserts that the instructions already given by the court, set forth earlier in this opinion, in effect, sufficiently covered the point sought to be covered by appellee in offering its instructions on the presumption against suicide. This is the principal argument advanced by appellant, *viz*, that the instructions were repetitive of those already given, although it is also mentioned that they were argumentative. It is suggested that the existence of legal presumptions is subject matter for law students, lawyers, and judges, but not for jurors. We do not agree with these contentions for reasons hereafter set out. Appellant relies principally upon one Arkansas case, *Watkins* v. *Metropolitan Life Ins. Co.*, 158 Ark. 386, 250 S. W. 350 (1923), and argues

that that case is dispositive of this appeal. There, this court held that the trial court did not commit error in refusing to give an instruction on the presumption against suicide, holding that the instruction was argumentative.[2] We added that there could have been no prejudice since other instructions correctly covered the law embraced in the requested instruction. The other instructions mentioned were similar to the instructions given in the instant case. We agree that the instructions which the court refused to give, set out in footnote 2, is argumentative, in that it says "this makes a *prima facie* case for the plaintiff", and should not have been given. That vice does not appear in the instructions offered by appellee in the case before us. However, entirely aside from that, appellant's reliance upon *Watkins* is ill-founded for the reason that the original transcript establishes that the following instruction was given:

"1.

While the law presumes that a man will not intentionally kill himself, this presumption is only prima facie, and not conclusive, and may be overcome by evidence either direct or circumstantial introduced in proof in the case.[3]"

It might be added that presumption against suicide instructions have been approved in numerous cases subsequent to *Watkins*.

The law recognizes that there are two kinds of presumptions, statutory presumptions and presumptions based upon human experience. In *Union Central Ins.*

---

[2] "5. If you find from the evidence that deceased was found with pistol-shot wound in his head, which caused his immediate death, this makes a *prima facie* case for the plaintiff, because the law presumes that one does not commit suicide, even where the wound is self-inflicted. Such presumption of evidence stands until overthrown by evidence that deceased intentionally shot himself."

[3] While clearly stating to the jury the legal presumption against suicide, it is interesting to note that the instruction seems somewhat slanted toward the side of the defendant. The record reveals that the instruction was given at the request of the defendant.

*Co.* v. *Sims,* 208 Ark. 1069, 189 S. W. 2d 193, this court said:

"From these cases it is apparent that a distinction is drawn between the effect to be given presumptions founded upon the laws of nature, and those which would not ordinarily arise but for the interposition of a statutory declaration. Where the presumption is a matter of public policy promulgated by the Legislature, it disappears when substantial evidence of facts is introduced; but since the laws of nature and of self-preservation are instinctive, a presumption predicated upon them may not be peremptorily brushed aside by mere contradiction. We think the effect of our decisions where accidental death or suicide were matters of controversy is that the presumption against suicide exists throughout trial, placing upon the insurer the burden of proving its affirmative defense."

Of course, there are different presumptions, some of which are overcome with a minimum of proof, almost by simply offering *some* evidence contrary to the presumption. But the presumption against suicide is a strong one as pointed out in the case just cited. The principle is even more forcefully stated in *Metropolitan Life Insurance Company and The National Life & Accident Insurance Company* v. *Graves,* 201 Ark. 189, 143 S. W. 2d 1102, where Justice Mehaffy, speaking for the court, and quoting from 8 Couch on Insurance, 7242, said:

"Another apt statement of the rule is that where the cause of death is unexplained or undisclosed by evidence, or where evidence tending to prove self-destruction is contradicted, or impeached, *or some evidence adduced is consistent with a reasonable hypothesis that the death was not self-caused,* [Our emphasis] the presumption against suicide prevails. And if there be a doubt, the evidence being conflicting and nearly evenly balanced, whether the death was caused by suicide or accident, the presumption is in favor of accident. So, where the evidence points equally or indifferently to ac-

cident or suicide, the theory of accident is adopted. And the force of the presumption based upon the love of life must, it is decided, be given effect against the defense of suicide, *unless the evidence discloses no other reasonable hypothesis.* [Our emphasis]"

In addition to Arkansas cases, decisions are cited from several other states, along with federal cases including two from the United States Supreme Court. When we reflect upon human emotions and desires, it is little wonder that our cases use such strong language, for we have all heard from childhood that "self-preservation is the first law of nature". *Metropolitan Life Insurance Company and The National Life & Accident Insurance Company* v. *Graves, Supra,* points out that the presumption against suicide must be given effect unless the evidence discloses no other reasonable hypothesis. The testimony in the present case is not abstracted but it is sufficient to say that evidence was offered on behalf of appellee which, if believed by the jury, would have supported the theory of accident.

It will be noted that in *Union Central Ins. Co.* v. *Simms, Supra.,* it is pointed out that a presumption based upon the laws of nature and self-preservation are not to be "peremptorily brushed aside by mere contradiction". Instructions that simply tell the jury that before it can find for the insurance company, it must find by a preponderance of the evidence that the deceased intentionally killed himself may not always be sufficient, *unless such instructions are accompanied by a proper instruction on the presumption against suicide.* For instance, let us say that a hunter is found dead in the woods, death being caused by a shotgun blast which tore off part of his head. The body is near a tree, with the fired gun lying between the tree and the body. No one can say whether the man committed suicide, or was accidentally killed, perhaps by the gun being accidentally discharged when falling to the ground from where it was propped against the tree. But there is a witness who testifies for the defendant insurance company that the deceased had told him the day before that his wife was

"running around with another man and that if she didn't quit, he was going to kill himself". Certainly, that is a circumstance supporting the defense of suicide; in fact under the hypothetical facts just related, it would constitute the preponderance of the testimony for no evidence was offered as to the cause of death (accident, murder, or suicide) by the representative of the deceased. Thus, without an instruction on the presumption against suicide, the defendant would clearly have the preponderance of the testimony, but should it prevail?

It may well be that the circuit judge, who had heard all the testimony in the case, was somewhat surprised at the verdict, and concluded that his instructions had not sufficiently apprised the jury of the law, and that he had made a mistake in not giving an instruction upon presumption against suicide.

For that matter, we said many times that we will not disturb the trial court's action in setting aside a verdict unless the court has clearly abused its discretion. This is of course, also applicable where a judge determines that he should have, in the original trial, given a requested instruction and grants a new trial for that reason. In *Hardin* v. *Pennington*, 240 Ark. 1000, 403 S. W. 2d 71, the trial judge decided that he should have given the appellee's requested instruction No. 5, and he accordingly granted a new trial. This court, in affirming, made no finding that error had been originally committed and that the instruction should have been given; rather, we said:

"The trial judge, in granting a new trial, explained in detail that he had refused to give the appellee's requested Instruction No. 5 and he did not think that the giving of any other instruction properly presented the issues. It is sufficient to say that the court in its sound discretion exercised its inherent power to grant a new trial; and that it is not shown that he acted arbitrarily in this case."

This language is *apropos* in the case now before us for the court exercised its sound discretion in its power to grant a new trial and it is not shown that he acted arbitrarily. We are not saying that the court should have given all of the instructions on presumption against suicide offered by appellee, nor are we saying that any of those specific instructions should have been given (though they seem to correctly state the law). We are saying that the trial court, exercising its discretion, was justified in granting a new trial by determining that appellee was entitled to have the jury told that there is a presumption against suicide.

Affirmed.